**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **ROBIN HURLBURT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO.  17-cv-2733** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **LOHR DISTRIBUTING CO, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Robin Hurlburt, for her Complaint against Defendant Lohr Distributing Co., Inc., states as follows:

### The Parties

1.  Plaintiff Robin Hurlburt is a citizen of the State of Missouri, residing in St. Louis, Missouri.

2.  Defendant Lohr Distributing Co, Inc. ("Lohr" or "Defendant") is a Missouri corporation, having its principal place of business in Missouri, at 1100 S 9th Street, St. Louis, MO 63104.

### Nature of the Action

3.  Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. § 1983 ("Section 1983"); the Missouri Human Rights Act ("MHRA"); and Missouri common law, to remedy the illegal and discriminatory adverse employment actions taken by Defendant against Plaintiff in which Defendant created, maintained, and subjected Plaintiff to a hostile and discriminatory work environment, wherein which she was repeatedly sexually

harassed and intimidated over the course of several years, by several of Defendant's agents, including Plaintiff's direct and indirect supervisors.  In addition, Plaintiff was discriminated against for her age, and ultimately was terminated from her employment because of her age and sex.

**Jurisdiction and Venue**

4.   This Court has original, federal question jurisdiction over Plaintiff's Title VII and Section 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1337, as well as 42 U.S.C. §§ 1983, 1988 and 2000e-5. The Court has supplemental jurisdiction over Plaintiff's common law and MHRA claims pursuant to 28 U.S.C. § 1367(a).

5.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred in this judicial district. In addition, Plaintiff and Defendant are located in this judicial district.

6.   Plaintiff brings her federal and state statutory claims on a timely basis pursuant to the procedural requirements of the Equal Employment Opportunity Commission (the "EEOC") in that on August 31, 2017, the U.S. Equal Employment Opportunity Commission ("EEOC") issued to Plaintiff its Notice of Right to Sue (the "Notice"), permitting Plaintiff to file a civil action based on the grievances Plaintiff raised in her EEOC Charge No. 560-2017-01359 ("Charge 560"). A copy of Charge 560 is attached hereto as **Exhibit 1**.

**Plaintiff's Employment History with Defendant**

7.   Plaintiff was hired by Defendant on December 27, 2013.

8.   For two weeks after being hired, Plaintiff was trained by Defendant's agent to become a truck driver and warehouse worker.

2

9.   Plaintiff was then given the choice between working in the warehouse in downtown St. Louis or driving delivery trucks throughout the St. Louis metropolitan area.

10.   Plaintiff chose to work in the warehouse because she felt it would be safer.

11.   Plaintiff worked in the warehouse for approximately two months.

**Defendant Reassigned Plaintiff In Discriminatory Fashion**

12.   After Plaintiff worked in the warehouse for approximately two months, with no formal or informal complaints charged against her at all, Defendant relocated a male employee from another warehouse location to Plaintiff's warehouse location, purportedly after that male employee had sexually harassed a female employee at his former location.

13.   Thus, rather than punish the male employee who sexually harassed another female employee at the other location, Defendant forced Plaintiff to leave her chosen post at the warehouse in order to become a driver – the precise position she specifically had stated she did *not* want to do just two months earlier.

14.   Nonetheless, because Defendant apparently had to move the other male employee due to his harassing conduct, Plaintiff was forced out of her position at the warehouse.

15.   Defendant thereby sent Plaintiff to work as a driver at Defendant's Overland, MO location.

16.   While working at the Overland location, Plaintiff was routinely harassed and verbally abused by her supervisor, Terry Moore, who picked her out and targeted her specifically with the offensive conduct.

17.   For instance, Plaintiff was once asked to leave her job for an entire day for an extremely trivial reason meant to ridicule her: Moore felt Plaintiff was "asking too many questions" while doing her job,

3

despite Plaintiff asking such questions in order to aid her work.

18. In front of several of Plaintiff's colleagues and peers, Moore ordered Plaintiff to "shut up and leave."

19. Plaintiff returned to work the following day to find that Moore had – incorrectly – completed Plaintiff's work for her by, for example, loading a 100-case delivery backwards, forcing Plaintiff to re-do much of the work.

## Defendant Baselessly Blamed Plaintiff for a Truck Malfunction

20. In July 2014, Plaintiff became locked in the back of her delivery truck while making deliveries on her normal route.

21. Plaintiff remained locked in the back of her delivery vehicle for approximately 30 minutes in 100-degree weather before being seen and let out by a bystander.

22. When Plaintiff returned to the warehouse to report the incident to Moore, he dismissed Plaintiff and claimed that, rather than because of a truck malfunction that Plaintiff had pointed out regarding a malfunctioning locking mechanism, Plaintiff was instead locked in the truck due to her own "stupidity" causing the incident.

23. The vehicle was then sent to another of Defendant's locations where it was inspected and it was determined that the locking mechanism of the truck malfunctioned as Plaintiff described.

## Defendant - for the Second Time - Discriminatorily Reassigned Plaintiff and Dramatically Cut Her Work Hours

24. In October 2014, Defendant moved the location where Plaintiff worked from the Overland location to a South County, Saint Louis-area location.

4

25. As the company grew and particularly as the October 2014 "busy season" approached, Defendant started hiring more drivers to accommodate the extra workload.

26. Over her objection, and despite her seniority and experience, Plaintiff was forced to give up her normal driving route, one in which she felt comfortable in, enjoyed driving, and was satisfactorily completing, to a newly hired male colleague.

27. After the male colleague took over this regular, safer route, Plaintiff was given "fill-in routes," which consisted of more dangerous and crime-ridden areas that made Plaintiff, as a female of smaller stature, feel particularly unsafe and vulnerable.

28. She made the fact she was uncomfortable driving in such areas very clear to her supervisors, on multiple occasions.

29. After some time, in and around November 2014, it became clear to Defendant that the "busy season" was not as successful and busy as anticipated.

30. As a result, Defendant thereafter imposed on Plaintiff – rather than less tenured male employees – a significant cut to her work hours.

31. During that timeframe, all of Plaintiff's previous routes were assigned to the newly-hired male employees.

32. Plaintiff, at one point, even plead with Defendant to allow her to perform custodial duties to get more hours of work.

33. Defendant rejected those requests, while at the same time giving substantial custodial and non-custodial hours to her male co-workers.

5

## Defendant - for the Third Time - Discriminatorily Reassigned Plaintiff and Paid Her Unequally

34.  In and around November 2014, a driver responsible for perhaps Defendant's least desirable delivery route – a route from St. Louis to Cape Girardeau – quit.

35.  Plaintiff learned this when Defendant came to her and demanded that Plaintiff take over that route if she wanted to keep her job.

36.  Plaintiff accepted the route, having no choice, which consisted of driving through the southeast Missouri area, and required her to drive down to Cape Girardeau twice a week, hundreds of miles per day.

37.  Despite being with the company for longer than the previous male driver that drove the Cape Girardeau route, Plaintiff was paid $1.00 less per hour than that male driver had been paid.

38.  Plaintiff continued to drive this route for approximately ten months, despite requesting, over and over, to be reassigned to one of Defendant's multiple local, St. Louis-area routes.

39.  During this time, all of the other, and in some cases newly-hired, male drivers continued to have local routes in the St. Louis area, despite Plaintiff having tenure over all but one of those workers and continuously requesting a local route.

40.  In August 2015, Plaintiff lost the full-time Cape Girardeau route when Defendant hired a new, male employee, and the promptly assigned him to take over her route rather than the route of her male co-employees.

41.  Defendant then assigned Plaintiff to a part-time position in the South County warehouse, reducing her workload to just three days a week.

6

**For No Reason But to Bully Plaintiff, Defendant Caused
Thousands of Dollars in Damage to Plaintiff's Car**

42.  In November 2015, Moore, with several pallets stacked onto a forklift, stacked the pallets between Plaintiff's car and a work truck in the parking lot of Defendant's warehouse.

43.  A witness who worked in the warehouse told Moore that he should not be using a forklift to stack pallets around Plaintiff's car.

44.  Moore responded to the witness with, "She shouldn't be parking here," despite the lack of "no parking" signs or any posted notification stating parking in that spot was prohibited.

45.  Moore also never asked Plaintiff to move her car, despite Plaintiff being less than one hundred feet away, with her back turned.

46.  The pallets, predictably, fell atop of Plaintiff's car, causing roughly $2,300 of damage to her personal vehicle.

47.  While all Moore had to do was simply ask Plaintiff to move her car, he took an unprecedented and dangerous action that caused unnecessary damage to her personal property.

48.  Moore refused to cover the cost to the damage he had done to Plaintiff's car.

49.  Three months later, Defendant fixed Plaintiff's car.

**Defendant - for the Fourth Time - Discriminatorily
Reassigned Plaintiff and Threatened Her Employment**

50.  In February 2016, the new, male hire who had taken Plaintiff's Cape Girardeau route quit.

51.  Plaintiff's supervisor, Bill Lenze, told Plaintiff that she would need to take that route again, essentially asserting that she would be terminated if she refused.

7

52.  Plaintiff was put on this lower-quality route, which consisted of 30 stops and over 130 cases to load and unload (in a truck Plaintiff was never trained to handle).

53.  On one occasion in February 2016, Plaintiff and Lenze proceeded to shout at each other in front of several other employees regarding this incident and subsequent threats by Defendant.

54.  Moore then pulled Plaintiff into his office and called Stacy Bracket from Human Resources to handle the situation.

55.  Plaintiff informed Bracket of Moore's threats toward Plaintiff, a fact that Moore predictably denied.

56.  With no one to represent or substantiate her claims in that office, Bracket automatically took Moore's side and asked no follow up questions to witnesses or conducted any investigation of any kind.

57.  After that meeting, Defendant ordered Plaintiff  to take back her Cape Girardeau route if she were to keep her job.

## Defendant Again Discriminatorily Limited Plaintiff's Hours

58.  In May 2016, Defendant found room for Plaintiff to work in the warehouse again after moving a new hire to a supervisor position.

59.  During this time, Plaintiff worked four days a week, from 1:00PM to 9:00PM.

60.  She was instructed to not work more than 30 hours per week.

61.  All the new male hires who worked part-time with Plaintiff were allowed to exceed 30 hours per week.

62.  In an effort to get more work hours, Plaintiff asked if she could exceed 30 hours per week.

8

63. That request and similar ones were immediately denied.

**Defendant Again Sexually Harassed and Sexually Discriminated Against Plaintiff**

64. During one interaction with Moore, when Plaintiff asserted that she needed full-time work in order to ensure a standard quality of life, Moore replied to Plaintiff that she "can always lay on [her] back to make some extra money" and that "if [he] were a woman, [he] would be a prostitute."

65. On another occasion, during idle conversation, Plaintiff also mentioned to another staff member and to Moore that she was moving out from her boyfriend's residence; Moore then asked Plaintiff if she was "going to keep her f*ck partner."

66. One day, when representatives for Stone Hill, a client of Defendant, visited the warehouse, Plaintiff was not introduced to Stone Hill's staff members despite all of her male co-employees being introduced.

67. On that same day, Defendant's staff members also remarked that Plaintiff wanted to have sex with an icicle that was hanging outside.

**Defendant Again Discriminated Against Plaintiff with Overt Ageism**

68. On one particularly busy day at the warehouse, another employee, Daulton Morrison, repeatedly and consistently harassed and verbally abused Plaintiff.

69. He ordered her to "move [her] old ass" and constantly called Plaintiff "stupid and old," and instructed her to "read a book."

70. Plaintiff complained of this behavior to John Troxel a supervisor of her and Morrison.

71. However, Troxel was Morrison's friend and the person who gave Morrison the job; Troxel took no action at all in relation to Plaintiff's complaints.

9

72. Plaintiff also reported Morrison's behavior to two other supervisors, but no action arose from the complaint.

73. Morrison received no punishment for his actions and continues to work for Defendant today.

## Defendant was Wrongfully Terminated

74. In January 2017, Plaintiff was diagnosed with the flu at an urgent care medical facility and was subsequently not able to work.

75. Plaintiff text-messaged her supervisor the next day and informed him that she would not be able to work that day due to her illness and procured an official excuse from her doctor, which was accepted.

76. Plaintiff was forced to miss a week of work as she recovered from the flu.

77. A week after her return, Plaintiff got sick again and was forced to take another day off of work.

78. On February 6, 2017, Plaintiff returned to work, was called into Cory Wallis' office, and was subsequently terminated from her job.


## COUNT I: AGE DISCRIMINATION IN EMPLOYMENT IN VIOLATION OF THE HUMAN RIGHTS ACT

79. Plaintiff incorporates all preceding paragraphs as if set forth herein.

80. At all times material hereto, Plaintiff was a female over the age of 40 and less than 70 years of age, thus placing the Plaintiff in a protected class under the Age Discrimination in Employment Act (ADEA) and the Missouri Human Rights Act, more specifically §213.010(1) and §213.055.1 RSMo.

81. At all times pertinent to this matter, Defendant employed over 6 individuals for twenty calendar weeks preceding this violation. Accordingly, Defendant constitutes an "employer" under the MHRA.

82. On February 6, 2017, Plaintiff was terminated from employment with Defendant without good cause.

83. Defendant additionally discriminated against Plaintiff when *inter alia* its agents frequently reassigned Plaintiff to unsafe, substandard routes despite Plaintiff's superior qualifications and instead assigned superior routes to less qualified, younger male colleagues and newly hired male employees.

84. Plaintiff is informed and believes that Plaintiff's age was a substantial factor, if not the motivating factor, in Defendant's discriminatory actions.

85. Defendant's actions, in *inter alia* Plaintiff's termination and its re-assigning Plaintiff to substandard routes despite her superior qualifications and terminating Plaintiff's employment, violate the provisions of the Age Discrimination in Employment Act and §213.055.1 RSMo.

86. As a direct result of Defendant's unlawful discrimination, Plaintiff has suffered pecuniary and emotional damage in the form of lost wages and benefits of employment.

87. As a direct result of Defendant's unlawful discrimination, Plaintiff has suffered emotional damage and mental anguish.

88. Defendant's conduct as aforesaid was outrageous and the result of an evil motive or reckless indifference to the rights of Plaintiff, thus entitling Plaintiff to an award of punitive damages against the Defendant to deter Defendant and others from engaging in future similar conduct.

WHEREFORE, Plaintiff requests that this Court enter its judgment in favor of Plaintiff and against the Defendant as follows:

      a.  that Plaintiff have and recover compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of

life, and other non-pecuniary losses;

b.  that Plaintiff have and recover her reasonable attorney fees pursuant to MHRA provisions; and

c.  that the Court award Plaintiff such other and further relief as the Court deems just and necessary in order to make Plaintiff whole.

<u>COUNT II: SEX DISCRIMINATION IN VIOLATION OF THE HUMAN RIGHTS ACT</u>

89.  Plaintiff incorporates all preceding paragraphs as if set forth herein.

90.  At the time of Plaintiff's discharge from employment, Plaintiff had more seniority and better performance than various male employees that Defendant retained in the same or similar position as Plaintiff.

91.  The Plaintiff's sex (female) was a substantial factor, if not the motivating factor, in Defendant's decision to terminate and/or reassign Plaintiff from employment and retain various male members of Defendant's employment in the same or similar positions with less seniority and lesser performance, in violation of Title VII of the Civil Rights Act of 1964, and the Missouri Human Rights Act, §213.055.1 RSMo.

92.  The Plaintiff's sex (female) was a substantial factor, if not the motivating factor, in Defendant's decision to reassign Plaintiff to unsafe, substandard routes despite Plaintiff's superior qualifications while assigning superior routes to less qualified, male colleagues and newly hired male employees, in violation of Title VII of the Civil Rights Act of 1964, and the Missouri Human Rights Act, §213.055.1 RSMo.

93.  In addition, and in only one instance of many, Defendant violated the MHRA when an agent of

Defendant stated that Plaintiff "can always lay on [her] back to make some extra money" and asked if Plaintiff was "going to keep her f*ck partner."

94.  At all times pertinent to this matter, Defendant employed over 6 individuals for 20 calendar weeks preceding this violation.  Accordingly, Defendant constitutes an "employer" under the MHRA.

95.  As a result of Defendant's unlawful discriminatory conduct towards the Plaintiff as aforesaid, Plaintiff has and will continue to sustain damages in the form of lost wages and benefits of employment.

96.  As a result of Defendant's unlawful and discriminatory conduct and actions as aforesaid, Plaintiff has suffered emotional distress and mental anguish.

97.  Defendant's conduct as aforesaid was outrageous and the result of evil motive or reckless indifference to the rights of Plaintiff, thus entitling her to an award of punitive damages against Defendant to deter Defendant and others from engaging in future similar conduct.

WHEREFORE, Plaintiff requests that this Court enter its judgment in favor of Plaintiff and against the Defendant as follows:

    a.  that Plaintiff have and recover compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

    b.  that Plaintiff have and recover her reasonable attorney fees pursuant to MHRA provisions; and

    c.  that the Court award Plaintiff such other and further relief as the Court deems just and necessary in order to make Plaintiff whole.

13

## COUNT III: WILLFUL VIOLATION OF THE OCCUPATIONAL SAFETY AND HEALTH ACT, 29 29 U.S.C. §§ 651–678 (1994)

98.  Plaintiff incorporates all preceding paragraphs as if set forth herein.

99.  Defendant provided an unsafe work environment by, *inter alia*, requiring Plaintiff to operate a truck she was not trained or equipped to operate, providing an unsafe truck for Plaintiff to drive with malfunctioning brakes, and providing a truck with malfunctioning locks, all in violation of the occupational safety and health standards of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. §§ 651–678 (1994)

100. As a direct and proximate result of Defendant and its agents, Plaintiff has sustained damages in the form of physical and emotional damages.

101. Defendant's conduct was outrageous due to its agents' reckless disregard for Plaintiff's rights, entitling her to punitive damages.

WHEREFORE, Plaintiff requests that this Court enter its judgment in favor of Plaintiff and against the Defendant as follows:

a.  that Plaintiff have and recover compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

b.  that Plaintiff have and recover her reasonable attorney fees pursuant to OSHA provisions; and

c.  that the Court award Plaintiff such other and further relief as the Court deems just and necessary in order to make Plaintiff whole.

14

## COUNT IV: GENERAL NEGLIGENCE

102. Plaintiff incorporates all preceding paragraphs as if set forth herein.

103. Pursuant to the facts set forth herein, Defendant had a duty to exercise reasonable diligence in creating a safe and secure workplace, free from hostility.

104. Defendant negligently breached that duty in many, if not all, of the manners set forth above.

105. As a direct and proximate result of said negligence, Plaintiff has suffered reputational, emotional, and monetary damages.

WHEREFORE, Plaintiff requests that this Court enter its judgment in favor of Plaintiff and against the Defendant as follows:

a. that Plaintiff have and recover compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

b. that the Court award Plaintiff such other and further relief as the Court deems just and necessary in order to make Plaintiff whole.

## COUNT V: DEFAMATION

106. Plaintiff incorporates all preceding paragraphs as if set forth herein.

107. Defendant frequently and on many instances defamed Plaintiff.

108. For example, and in only one instance of many, when Plaintiff asserted that she needed full-time work in order to ensure a standard quality of life, agent of Defendant stated that she "can always lay on [her] back to make some extra money" and asked if Plaintiff was "going to keep her f*ck partner."

15

109. On information and belief, agents of Defendant committed slander and/or libel in communications with colleagues.

110. As a direct and proximate result of the agents of Defendant's actions delineated herein, Plaintiff has suffered reputational, emotional, and monetary damages.

WHEREFORE, Plaintiff requests that this Court enter its judgment in favor of Plaintiff and against the Defendant as follows:

      a.  that Plaintiff have and recover compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

      b.  that Plaintiff have and recover punitive damages in an amount appropriate to punish and deter Defendant's conduct, as aforesaid; and

      c.  that the Court award Plaintiff such other and further relief as the Court deems just and necessary.

### COUNT VI: SEX DISCRIMINATION IN VIOLATION OF TITLE VII

111. Plaintiff incorporates all preceding paragraphs as if set forth herein.

112. The Defendant's discrimination actions violated 42 U.S.C. §§ 1981 and 2000e *et seq.*, ("Title VII").

113. At all times pertinent to this matter, Defendant employs over 250 individuals.

114. As such, Defendant constitutes an "employer" under Title VII.

115. Plaintiff, as a female, is in a protected class under Title VII.

116. Defendant, through its employees and agents, sexually discriminated against Plaintiff when, *inter*

16

*alia*, reassigning Plaintiff to subordinate routes despite her objectively superior amount of experience, paying her a lesser wage for the same work as her male co-employees, and cutting her hours in favor of giving ample work to less-experienced and/or more-newly hired male co-employees..

117. Defendant did so knowingly and with a discriminatory motive, and with malice and/or reckless indifference to Plaintiff's rights.

118. As a direct result of Defendant's sexual discrimination, Plaintiff has suffered pecuniary and emotional damage.

WHEREFORE, Plaintiff requests that this Court enter its judgment in favor of Plaintiff and against the Defendant as follows:

     a.   that Plaintiff have and recover compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

     b.   that Plaintiff have and recover punitive damages in an amount appropriate to punish and deter Defendant's conduct, as aforesaid;

     c.   that Plaintiff have and recover her reasonable attorney fees pursuant to Title VII provisions; and

     d.   that the Court award Plaintiff such other and further relief as the Court deems just and necessary.

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*

18