# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

**ROBIN HURLBURT,**    )
                       )
  **Plaintiff,**       )
                       )
**v.**                 )    **Case No. 4:17-cv-02733**
                       )
**LOHR DISTRIBUTING CO., INC.,**  )
                       )
  **Defendant.**       )

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER

COMES NOW, Defendant, Lohr Distributing (hereinafter, "Defendant"), by and through undersigned counsel, and in opposition to Plaintiff's Motion for a Protective Order, states to the Court as follows:

## I.   **BACKGROUND**

On or about November 30, 2018, Defendant served on Plaintiff a Notice of Deposition scheduling the Deposition of Plaintiff, Robin Hurlburt, for 9:00 a.m. on December 12, 2018, at the Law Offices of McMahon Berger, PC (Exhibit 1).  On December 12, 2018, Plaintiff and her attorney, Mr. Daniel Harvath, appeared at the office of McMahon Berger shortly before 9:00 a.m. Mr. Harvath asked to speak with Defendant's attorney, Robert Younger, in the lobby of McMahon Berger and proceeded to tell Mr. Younger that he and his client had a problem with the attendance of Defendant's representative, Mr. Corey Wallis, at Plaintiff's deposition.  Mr. Harvath stated, in front of staff of McMahon Berger and his client, Ms. Hurlburt, that Mr. Wallis was the main harasser and intimidated Plaintiff and even called Plaintiff "a whore" (Exhibit 2).  Mr. Harvath demanded that Mr. Younger remove Mr. Wallis from the deposition.  Mr. Younger simply refused to remove Mr. Wallis and, hearing that, Mr. Harvath turned to walk away and said "You can file a motion if you want I will have fun talking about this with the Judge" (Exhibit 2).  Mr. Younger

1

advised Mr. Harvath that he intended to make a record of the events with the Court Reporter and invited him to join and Mr. Harvath responded "No, I'm not going to waste my time" (Exhibit 2). As they were leaving staff of McMahon Berger heard Plaintiff ask Mr. Harvath "What was that all about" to which, Mr. Harvath simply replied "Get on the elevator" (Exhibit 2).  Plaintiff and his attorney then left McMahon Berger.  At no time during this interaction did Mr. Harvath ever state that he wanted to seek Court intervention in any manner and NEVER did he indicate that he wanted to seek a Protective Order.  In fact, he simply laughed at the position of defense counsel indicating he would have "fun" discussing with the Judge any motion Defendant filed with the Court.

After returning to his office, Mr. Harvath emailed Mr. Younger indicating that Mr. Younger should have known that the attendance of Mr. Wallis would be objected to by Plaintiff because Mr. Wallis "was one of, if not the primary individual that sexually harassed and intimidated my client for years while working at Lohr." (Exhibit 3).  In addition, Mr. Harvath pointed out that "Among other things, Mr. Wallis is the gentleman that called my client a "whore" in front of her and several other co-workers and, at one point, told her to go "f*ck an icicle." (Exhibit 3). Further Mr. Harvath stated "Moreover, Mr. Wallis is by no stretch of the imagination a "decision maker" for Lohr; I cannot imagine that someone of Mr. Wallis' status at the company would have to observe witness depositions in this matter." (Exhibit 3).

In addition to specific allegations pertaining to alleged conduct of Mr. Wallis, Mr. Harvath indicated that somehow Mr. Younger had a duty to inform him of Mr. Wallis' attendance at the deposition prior to December 12th and that his failure to do so and insistence on the attendance of Mr. Wallis was an unprofessional attempt to intimidate Plaintiff (Exhibit 3).  Finally, for the first time, Mr. Harvath indicated his intent to file a Motion for Protective Order if Defendant insisted on the attendance of Mr. Wallis at Plaintiff's deposition (Exhibit 3).

2

In response to the email correspondence of Mr. Harvath, Mr. Younger advised Mr. Harvath that Plaintiff's pleadings and responses to written discovery in this case in no manner allege that Mr. Wallis in any manner harassed or intimidated Plaintiff (Exhibit 4). Further, Mr. Younger pointed out that Mr. Wallis was identified in Defendant's Answers to Interrogatories as an individual that had input into the decision to terminate Plaintiff, was Plaintiff's supervisor at the time of her termination and was present when Plaintiff was advised of her termination (Exhibit 4). As such, given that the only claims advanced by Plaintiff involve her termination, Mr. Wallis is Defendant's choice as a representative at Plaintiff's deposition for legitimate reasons (Exhibit 4). Additionally, Mr. Younger pointed out that the word "whore" does not appear in any pleading or discovery in this case and the alleged "icicle" comment was allegedly made by "staff members", not Mr. Wallis (Exhibit 4). Further, Mr. Younger pointed out that Defendant has no obligation under the rules to advise Plaintiff of who the Defendant's representative will be prior to the deposition (Exhibit 4). Mr. Younger provided additional dates to take Plaintiff's deposition and asked Mr. Harvath to suggest a date if those were not acceptable and advised that Mr. Wallis would, in fact, be in attendance at Plaintiff's deposition and advised if this deposition was not rescheduled immediately, Defendant intended to file a Motion for Sanctions for Plaintiff's Failure to Appear at a Properly Noticed Deposition (Exhibit 4).

Mr. Harvath's only response was to claim that Defendant's position was "inappropriate and unreasonable" and to file the instant Motion for a Protective Order to preclude Mr. Wallis from attending Plaintiff's deposition as the representative of Defendant because Plaintiff is allegedly intimidated and afraid of being around Mr. Wallis (Exhibit 5; Doc. # 42).

II.    **RELEVANT ALLEGATIONS FROM PLAINTIFF'S COMPLAINT AND FIRST AMENDED COMPLAINT**

Plaintiff filed her two (2) Count First Amended Complaint in the instant matter on or about September 3, 2018 (Doc. #31).   The ONLY CLAIMS advanced within her First Amended Complaint are that Plaintiff was paid less than and required to work less-preferential routes than similarly situated male and younger employees and was ultimately terminated from her employment with Defendant because of her age, in violation of the ADEA, and gender in violation of Title VII (Doc. #31).  Specifically absent from Plaintiff's First Amended Complaint is any cause of action for or involving allegations of harassment or intimidation (Doc. #31).

Despite the fact that Plaintiff has not advanced a single claim for harassment or intimidation in the instant cause of action against Defendant, Plaintiff's original Complaint and First Amended Complaint made numerous factual allegations of alleged harassment and intimidation (Docs. #1 and #31).  More specifically, Plaintiff alleges the following alleged acts of harassment and intimidation occurred while she was working for Defendant:

1) Plaintiff alleges that she was routinely harassed and verbally abused by her supervisor, **Terry Moore**, who picked her out and targeted her specifically with the offensive conduct (Doc. #1, para. 16; Doc. #31, para. 14);

2) **Moore** allegedly felt Plaintiff was asking too many questions while doing her job and ordered Plaintiff to shut up and leave (Doc. #1, para. 17 & 18; Doc. #31, para. 15 - 16);

3) **Moore** allegedly claimed that Plaintiff had been locked in her own truck as a result of Plaintiff's stupidity instead of a truck malfunction (Doc. #1, para. 22);

4) **Moore** allegedly caused a load of pallets to be dropped on Plaintiff's car causing damage (Doc. #1, paras. 42 – 47);

5) **Bill Lenze** allegedly shouted at Plaintiff and **Moore** allegedly threatened Plaintiff (Doc. #1, paras. 53 – 56; Doc. #31, paras. 35 - 38);

6) **Moore** allegedly told Plaintiff that she "can always lay on [her] back to make some extra money" and that "if [he] were a woman, [he] would be a prostitute." (Doc. #1, para. 64; Doc. #31, para. 48);

4

7) **Moore** allegedly asked Plaintiff if she "was going to keep her f*ck partner." (Doc. #1, para. 65; Doc. #31, para. 49);

8) Defendant's **staff members** allegedly remarked that Plaintiff wanted to have sex with an icicle that was hanging outside (Doc. #1, para. 67; Doc. #31, para. 50);

9) **Daulton Morrison** allegedly ordered Plaintiff to "move [her] old ass" and constantly called Plaintiff "stupid and old" and instructed Plaintiff to "read a book" (Doc. #1, paras. 68 – 69; Doc. #31, para. 51).

In Denying, subject to reconsideration, Defendant's Motion to Strike, *inter alia*, the above noted allegations, this Court determined that said allegations of harassment and intimidation "**could** be relevant because they **may provide additional background and context of Plaintiff's wrongful termination claims** in violation of Title VII and the ADEA." (Doc. # 29) (emphasis added).

For the purposes of Plaintiff's Motion for Protective Order, it is equally important to note that the ONLY allegation involving Mr. Corey Wallis, Plaintiff's supervisor at the time of her termination, is that "On February 6, 2017, Plaintiff returned to work, was called into Corey Wallis' office, and was subsequently terminated from her job." (Doc. #1, para. 78; and Doc. #31, para. 61). There is no further or additional mention of or reference to Mr. Wallis within Plaintiff's Complaint or First Amended Complaint. Stated another way, Plaintiff's Complaint and First Amended Complaint, while making specific allegations of alleged harassment and intimidation with respect to alleged conduct of other employees of Defendant, make no such allegations of harassment or intimidation directed at the conduct of Mr. Wallis (Doc. #1; and Doc. #31).

III. **RELEVANT WRITTEN DISCOVERY**

To date, the parties have conducted extensive written discovery in this case. On or about May 21, 2018, Plaintiff served Plaintiff Robin Hurlburt's Response to Defendant's First Set of Interrogatories Directed to Plaintiff (Exhibit 6). Plaintiff's Responses to Interrogatories include the following relevant Responses:

**INTERROGATORY 6:**    Please describe in detail and separately each and every incident where Plaintiff claims she was discriminated against on the basis of her sex, including, but not limited to, a description of the discriminatory act or omission, the date(s) and individual(s) involved, and identify any witnesses thereto.

**ANSWER:    Objection.  This interrogatory is overly broad, unduly burdensome, and responsive information is contained in, or can be derived from, Plaintiff's Complaint Against Defendant Lohr Distributing Co., Inc.**

**INTERROGATORY 7:**    Please describe in detail and separately each and every incident where Plaintiff claims she was discriminated against on the basis of her age, including, but not limited to, a description of the discriminatory act or omission, the date(s) and individual(s) involved, and identify any witnesses thereto.

**ANSWER:    Objection.  This interrogatory is overly broad, unduly burdensome, and responsive information is contained in, or can be derived from, Plaintiff's Complaint Against Defendant Lohr Distributing Co., Inc.**

**INTERROGATORY 8:**    Please describe in detail and separately each and every incident of alleged harassment which Plaintiff alleges she was subjected to during her employment with Defendant, including, but not limited to, the date(s), the individual(s) involved, and the identity of any witnesses thereto.

**ANSWER:    Objection.  This interrogatory is overly broad, unduly burdensome, and responsive information is contained in, or can be derived from, Plaintiff's Complaint Against Defendant Lohr Distributing Co., Inc.**

(Exhibit 6).

On or about June 9, 2018, Defendant's counsel sent a "golden rule" letter to Plaintiff's counsel addressing, in part, Plaintiff's objection/response to Interrogatory Nos. 6, 7 and 8. Specifically, Defendant requested a description of each alleged action and that Plaintiff not "hide behind the general allegations of Plaintiff's Complaint" (Exhibit 7).

On or about July 20, 2018, Plaintiff's counsel responded to Defendant's "golden rule" letter and specifically with respect to Interrogatories No. 6, 7 and 8, stated as follows:

**Interrogatories No. 6, 7, 8, 10 and 16**
Interrogatory No. 6 states the following: "Please describe in detail and separately each and every incident where Plaintiff claims she was discriminated against on the basis of her sex, including,

but not limited to, a description of the discriminatory act or omission, the date(s) and individual(s) involved, and identify any witnesses thereto."

Interrogatory No. 7 states the following: "Please describe in detail and separately each and every incident where Plaintiff claims she was discriminated against on the basis of her age, including, but not limited to, a description of the discriminatory act or omission, the date(s) and individual(s) involved, and identify any witnesses thereto."

Interrogatory No. 8 states the following: "Please describe in detail and separately each and every incident of alleged harassment which Plaintiff alleges she was subjected to during her employment with Defendant, including but not limited to, the date(s), the individual(s) involved and the identity of any witnesses thereto."

*** 

**As responses to No. 6, 7, 8, 10, 11 and 16, Plaintiff provided that responsive information is contained in or can be derived from, Plaintiff's Complaint Against Defendant Lohr Distributing Co., Inc.**

**Plaintiff withdraws her objection, and has no further information to supplement her previous response.**

**However, Plaintiff notes that what is provided in her response is what she recalls; she does not concede that there were no other instances of, *inter alia*, harassment, only that she has provided the instances she can readily recall.**

(Exhibit 8).

In short, the allegations within Plaintiff's Complaint and First Amended Complaint are all of the specific factual allegations of harassment/intimidation that Plaintiff can even recall and specifically identify (Exhibit 8). None of which in any manner reference or involve Mr. Wallis.

On or about August 28, 2018, Defendant served Defendant's Answers to Plaintiff's First Interrogatories (Exhibit 9). Specifically, in Response to Plaintiff's **Interrogatory No. 7** seeking the identity of all individuals who had input in the decision to terminate Plaintiff, Defendant answered **Bob Gassoff** and C**orey Wallis** (Exhibit 9). Further, in Answer to **Interrogatory No. 11**, Defendant identified Corey Wallis as Plaintiff's Supervisor between 4/1/2014 and 4/6/2015 and again between 9/28/2016 and 3/2017 (Exhibit 9).

## IV.   **ARGUMENT**

The primary purpose of permitting a representative of a corporate party to attend depositions and hearing on behalf of the company is to permit the Company to actively participate in the litigation and assist, as necessary, the attorney representing the Company.  To this end, Defendant has a legitimate need for Mr. Wallis to attend the deposition of Plaintiff.  Mr. Wallis was Plaintiff's supervisor at the time of her termination.  Mr. Wallis had input into the decision to terminate Plaintiff.  Mr. Wallis was present when Plaintiff was informed of her termination.  Plaintiff's termination is essentially the only remaining issue in this case.  Even further, now for the first time, Mr. Wallis is accused of harassing Plaintiff, which Mr. Wallis categorically denies, and having Mr. Wallis hear firsthand Plaintiff's new allegations against him is paramount to allowing Defendant to defend itself in this litigation.

Further, the basis of Plaintiff's request to exclude Mr. Wallis from attending her deposition is solely ALLEGATIONS of harassment and intimidation.  Mr. Wallis denies any such conduct. Therefore, to simply preclude the attendance of Mr. Wallis, a very important individual in Defendant's defense of this case, inherently gives some credit to Plaintiff's allegations and punishes Defendant without justification.   Having Mr. Wallis present affords counsel the opportunity to discuss Plaintiff's testimony with Mr. Wallis during the deposition and potentially formulate additional or different questions.   Further, Mr. Wallis may assist counsel in understanding testimony of Plaintiff which may be technical or specific to the industry or her job.

Additionally, there is nothing in the allegations within Plaintiff's Complaint which in any manner are threatening or physical in nature.  The allegations at worst are mere name calling and inappropriate comments.  It is not reasonable for Plaintiff to have fear for her safety based on someone's allegedly calling her names or making inappropriate, non-threatening comments to her.

8

There is simply no reasonable justification to preclude Mr. Wallis from attending Plaintiff's deposition as there is no indication that Mr. Wallis has ever threatened Plaintiff or is currently a threat to Plaintiff.  According to Plaintiff's claim for damages, it is inferred that Plaintiff contends that she would have continued to work for Defendant up to today had she not been terminated. Stated another way, Plaintiff admits that she is willing and able to work with Mr. Wallis on a daily basis in support of her claim for damages but now her attorney contends that she is afraid to be in the same room with Mr. Wallis for her deposition.  The Motion for a Protective Order is frivolous on its face.

There are less restrictive ways to address Plaintiff's concerns, if said concerns actually exist.  The deposition can be taken and should Mr. Wallis engage in any inappropriate conduct, Plaintiff can suspend the deposition and address same with the Court at that time.  A Discovery Commissioner could be appointed.    However, to simply exclude Defendant's chosen representative based on Plaintiff's allegations and subjective complaint of fear is not reasonable and is inherently unfair.  Further, Defendant can locate no precedent or Rule which permits such an exclusion based solely on Plaintiff's alleged fear resulting from conduct that occurred almost two (2) years ago.

WHEREFORE, for the reasons set forth herein, Defendant requests this Court Deny Plaintiff's Motion for Protective Order and award Defendant fees and costs in opposing said Motion, together with any further Orders this Court deems proper.

Respectfully submitted,

McMAHON BERGER, P.C.


  /s/ Robert D. Younger
Thomas O. McCarthy, #22636MO
Robert D. Younger, #42909
2730 North Ballas Road, Suite 200
St. Louis, MO  63131-3039
(314) 567-7350 - Telephone
(314) 567-5968 – Facsimile

Attorneys for Defendant


### CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of December, 2018, a true and correct copy of the foregoing was served via the Court's electronic filing system addressed as follows:

Daniel E. Harvath
75 W. Lockwood
Webster Groves, MO 63119
dharvath@harvathlawgroup.com


  /s/ Robert D. Younger